## In re JACKSON TELEVISION, LTD., Debtor.

## D & K BROADCAST PROPERTIES, LTD., Plaintiff,

v.

## C. Kenneth STILL, Trustee, Defendant.

Bankruptcy No. 87–01476.
Adv. No. 90–1062.

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 13, 1990.

W. Neil Thomas, III, Chattanooga, Tenn., for D & K Broadcast Properties.

Scott N. Brown, Jr., Chattanooga, Tenn., for C. Kenneth Still, Trustee.

### MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

This adversary proceeding is before the court upon cross-motions for partial summary judgment filed by the plaintiff and defendant. The question to be determined

at this stage of the proceeding is whether the trustee is liable to the plaintiff for damages for missing and defective equipment sold by the trustee to the plaintiff pursuant to a confirmed chapter 11 plan. Having considered the parties' briefs and stipulations of fact, the court now enters its findings of fact and conclusions of law pursuant to Bankr.Rule 7052.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) (West Supp.1989).

## I.

Jackson Television, Ltd., ("Jackson") filed a chapter 11 bankruptcy petition in this court on July 2, 1987. Jackson owned and operated a television station in Jackson, Mississippi. On or about March 14, 1989, this court entered an order confirming a chapter 11 plan (the "plan") jointly proposed by the plaintiff, D & K Broadcast Properties, Ltd. ("DKBP"), and a creditor of the debtor, Independent Television Sales, Inc. ("ITS"). The plan provided that DKBP would purchase all of Jackson's assets for cash. The funds paid by DKBP to acquire the assets of Jackson are to be used to pay administrative expenses of the bankruptcy estate and to satisfy the claims and interests in the estate. The defendant trustee was appointed to execute the plan.

Prior to the sale, DKBP furnished the trustee with an engineering inspection report which indicated that certain equipment listed in the debtor's initial bankruptcy filing was missing from the station, and certain other equipment was either nonfunctional or not maintained.

At the closing on August 14, 1989, the trustee and DKBP entered into an escrow agreement in which $100,000 of the sales proceeds were placed in escrow to be dispersed subsequently upon joint directive of the parties or by order of the court. The agreement provided the escrow account was established because several issues remained "unresolved, or unresolvable" at closing, including the trustee's possible entitlement to credit for certain prepaid leases, "final evaluation of accounts receivable and any credits arising to either party therefrom, and any adjustments to pay-

ables which become evident after closing." In addition, at the closing, the trustee acknowledged "without prejudice" a letter in which DKBP reserved its right to seek an adjustment to the purchase price for the missing and defective equipment.

The sale to DKBP under the plan was consummated on August 14, 1989. At that time, the trustee executed a bill of sale for the debtor's equipment and other assets. Attached to the bill of sale was a list of the property sold.

DKBP seeks damages both for seven pieces of equipment that were missing at closing and for the equipment that was defective. With respect to the defective equipment, DKBP contends that it is entitled to recover under theories of implied warranty of merchantability and express warranty.

The trustee agrees DKBP is entitled to a refund for the missing equipment. The trustee contends, however, that he gave neither an implied warranty of merchantability nor an express warranty as to the utility, quality, or condition of the assets sold pursuant to the plan.

## II.

The principal issue in this case is whether the bankruptcy trustee is liable to a purchaser in a liquidating chapter 11 for breach of warranty. The doctrine of caveat emptor generally applies to bankruptcy sales. *Hagan v. Gardner*, 283 F.2d 643, 646 (9th Cir.1960); *Handlan v. Bennett*, 51 F.2d 21 (4th Cir.1931); *Hall v. McGehee*, 37 F.2d 854, 855 (5th Cir.1930); *Walter Green, Inc. v. A.H.–R.S. Coal Corp. (In re A.H.–R.S. Coal Corp.)*, 8 B.R. 455 (Bankr.W.D. Pa.1981); *see also John Schaap & Sons Drug Co. v. Rone*, 19 F.2d 517 (8th Cir. 1927). The purchaser in a bankruptcy sale "assumes the risk of the quality and condition of purchased goods, unless the purchaser is protected by warranty." *Walter Green, Inc. v. A.H.–R.S. Coal Corp., (In re A.H.–R.S. Coal Corp.)*, 8 B.R. at 458. The Bankruptcy Code is silent regarding the application of warranties to a sale of goods in chapter 11. Therefore, reference must be made to state law.

■ DKBP asserts that the trustee did not effectively disclaim an implied warranty of merchantability in the bill of sale. Tennessee Code Annotated § 47–2–316(2) which enacts § 2–316(2) of the Uniform Commercial Code provides in relevant part:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by writing and conspicuous....

Tenn.Code Ann. § 47–2–316(2) (1979).

In the instant case, the bill of sale stated "The Assignor conveys the aforesaid property and assets without any warranties, except as expressly stated herein...." This language would not have effectively disclaimed an implied warranty of merchantability under Tennessee Code Annotated § 47–2–316(2) because it did not include the word "merchantability," and most courts have enforced this requirement. *See Curtis v. Murphy Elevator Co.*, 407 F.Supp. 940, 947 (E.D.Tenn.1976); *S–C Indus. v. American Hydroponics Sys.*, 468 F.2d 852, 854 n. 2 (5th Cir.1972).

DKBP asserts that an implied warranty of merchantability arose under Tennessee Code Annotated § 47–2–314 which enacts § 2–314 of the Uniform Commercial Code. That provision reads in relevant part as follows:

> (1) Unless excluded or modified (§ 47–2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must be at least such as:
>
>> (a) pass without objection in the trade under the contract description; and
>>
>> (b) in the case of fungible goods, are of fair average quality within the description; and
>>
>> (c) are fit for the ordinary purposes for which such goods are used; and

> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promises or affirmations of fact made on the container or label if any.

Tenn.Code Ann. § 47–2–314 (1979).

For the implied warranty of merchantability to arise the seller must be a merchant. Tennessee Code Annotated § 47–2–104 provides:

> (1) "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Tenn.Code Ann. § 47–2–104 (1979).

The official comments to § 47–2–104 discuss the term "merchant" as used in § 2–314's definition of the warranty of merchantability. They state:

> ... such warranty is implied only 'if the seller is a merchant with respect to goods of that kind.' Obviously, this qualification restricts the implied warranty to a much smaller group than everyone who is engaged in business and requires a professional status as to particular kinds of goods.

Tenn.Code Ann. § 47–2–104 comment (1979).

Within the context of bankruptcy, the case law indicates that the implied warranty of merchantability can arise if the seller/debtor is a merchant with respect to the goods he is selling. *See Southeastern Sprinkler Co. v. Meyertech Corp.*, 831 F.2d 410, 418 (3d Cir.1987) (sprinkler system fittings sold by debtor, a supplier of sprinkler system equipment, failed to conform to the Uniform Commercial Code

standards of merchantability); *Franklin Computer Corp. v. Wolsten's Projector House (In re Franklin Computer Corp.)*, 57 B.R. 155, 158 (Bankr.E.D.Pa.1986) (no breach of implied warranty of merchantability as to computer programs sold by debtor in business of selling computers due to failure of proof on incompatibility of software); *Whiteley v. OKC Corp.*, 719 F.2d 1051, 1053 (10th Cir.1983) (debtor, a supplier of propane, breached implied warranty of merchantability in sale of propane); *Rogers Wholesalers v. M.J. Indus. (In re Rogers Wholesalers)*, 37 B.R. 18, 20 (Bankr.D.Ma.1983) (debtor, a seller of pharmaceutical goods, breached implied warranty of merchantability in sale of pharmaceutical products). No case was found in which an implied warranty of merchantability arose in a sale by a nonmerchant debtor or a bankruptcy trustee.

Although DKBP contends in a reply brief that the actual seller of the television station equipment was the debtor television station, the record establishes that the trustee was the seller of the equipment. He, not the debtor, had title to the equipment at the time of sale, signed the bill of sale, entered into the escrow agreement, and acknowledged DKBP's letter reserving its rights.[1] Since the seller was a bankruptcy trustee who did not hold himself out as having knowledge or skill peculiar to the television station equipment sold and who did not deal in such equipment, the court concludes he was not a merchant "with respect to goods of that kind" and no implied warranty of merchantability arose.

■ DKBP further contends the trustee breached an express warranty by conveying the deficient equipment. The bill of sale disclaimed all warranties "except as expressly stated herein." The parties have stipulated that neither the debtor nor the trustee nor any party acting for them made any express warranties as to the condition, quality, or fitness of any of the equipment sold other than such warranty which may have arisen from the listing of the debtor's equipment on the debtor's schedules and on the exhibit attached to the bill of sale. DKBP claims an express warranty that the equipment existed and would function properly arose from the listing of the equipment. Tennessee Code Annotated § 47–2–313(1)(b) which enacts § 2–313(1)(b) of the Uniform Commercial Code provides:

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Tenn.Code Ann. § 47–2–313(1)(b) (1979).

Courts have held that breach of an express warranty by description can arise when a buyer purchases goods in reliance upon the seller's incorrect description of the goods. *See, e.g., In re Duty Free Shops Corp.*, 17 B.R. 274, 275 (Bankr.S.D. Fla.1982) (bankruptcy trustee's bill of sale stated "4,200 pairs of pants" and buyer received 3,700 pairs); *Standard Stevedoring Co. v. Jaffe*, 42 Tenn.App. 378, 385, 302

---

1. Even if the debtor had sold the television station equipment to the plaintiff, no warranty of merchantability would have arisen because Jackson would not be considered a merchant with respect to television station equipment based on one isolated sale of such equipment during a liquidation. Official Comment 3 to Tennessee Code Annotated § 47–2–314 (West 1979) which enacts § 2–314 of the Uniform Commercial Code states, "A person making an isolated sale of goods is not a 'merchant' within the meaning of the full scope of this section and, thus, no warranty of merchantability would apply." *See, e.g., Fred J. Moore, Inc. v. Schinmann*, 40 Wash.App. 705, 700 P.2d 754, 757 (1985) (a farmer of mint for mint oil who made a one-time sale of mint roots to another mint farmer dealt in mint oil, not mint roots, and was not a merchant of mint roots based on one isolated sale); *Kates Millinery v. Benay-Al-*

*bee Corp.*, 114 Misc.2d 230, 450 N.Y.S.2d 975, 976–77 (N.Y.Civ.Ct.1982) (a manufacturer of novelty headwear who sold a pressing machine used in manufacturing headwear to another manufacturer of novelty headwear was not "a merchant with respect to goods of that kind," and so no implied warranty of merchantability arose); *McGregor v. Dimou*, 101 Misc.2d 756, 422 N.Y.S.2d 806, 809 (N.Y.Civ.Ct.1979) (a body and fender specialist who sold a used car was not a merchant of used cars even though he had sold a few other used cars because a person making an isolated sale of goods is not a merchant under the Code); *Bevard v. Ajax Mfg. Co.*, 473 F.Supp. 35, 37–38 (E.D.Mich.1979) (Ajax Manufacturing Company who sold a used press through a used equipment dealer was not a merchant but only an occasional seller of used presses).

S.W.2d 829, 833 (Tenn.Ct.App.1956) (seller advertised "15–20 ton" crane and the crane could lift less than 10 tons); *Mashburn v. Thornton*, 35 Tenn.App. 216, 222, 244 S.W.2d 173, 176 (Tenn.Ct.App.1951) (a car dealer represented a car was new when in fact it was used). In each of these cases, the court found the buyer was not aware of the deficiencies in the goods prior to the sale. *See In re Duty Free Shops Corp.*, 17 B.R. at 275; *Standard Stevedoring Co. v. Jaffe*, 42 Tenn.App. at 383, 302 S.W.2d at 832; *Mashburn v. Thornton*, 35 Tenn.App. at 220–221, 244 S.W.2d at 175.

In *Walter Green, Inc. v. A.H.–R.S. Coal Corp. (In re A.H.–R.S. Coal Corp.)*, 8 B.R. at 456, the buyer of a shovel at a debtor's public sale of equipment sued the debtor for damages alleging the shovel it received was a different model from the model described in the debtor's advertising flyer. *Id.* The debtor had expressly disclaimed all implied and express warranties in its advertising flyer and stated that all equipment was sold "As is, where is." *Id.* at 456–457. Based on the disclaimer and the buyer's inspection of the machine prior to the sale, the court refused to allow the buyer to recover. *Id.* at 458.

In the instant case, the trustee did not describe the items sold beyond a listing of the names of the equipment. Aside from the missing equipment, DKBP received the quantity and type of equipment listed. In addition, at the time of the sale, DKBP was aware of the condition of the equipment. Courts have held that significant reliance by a buyer on an examination of the goods before a sale is completed indicates the buyer did not rely on the seller's affirmations or descriptions so as to create an express warranty. *Alan Wood Steel Co. v. Capital Equip. Enter.*, 39 Ill.App.3d 48, 349 N.E.2d 627, 635 (1976); see also *Janssen v. Hook*, 1 Ill.App.3d 318, 272 N.E.2d 385, 388 (1971); *Sylvia Coal Co. v. Mercury Coal & Coke Co.*, 151 W.Va. 818, 156 S.E.2d 1, 7 (1967). At the time of the sale, DKBP was aware of the condition of the equipment based upon its own inspection of the goods. Though DKBP informed the trustee of perceived deficiencies in some of the equipment, DKBP and the trustee did not agree that those deficiencies would be remedied, nor did the trustee make any express warranties as to the condition of the equipment. Therefore, DKBP could not have relied upon the list of equipment so as to create an express warranty that the equipment would function properly.

An order will enter granting the defendant's motion for partial summary judgment.