**In re APEX INTERNATIONAL MANAGEMENT SERVICES, INC., Debtor.**

**SOUTHEAST BANK, N.A., a national banking association, Plaintiff.**

**v.**

**Charles W. GRANT, as Bankruptcy Trustee, and the United States Department of Treasury, Internal Revenue Service, Defendants.**

**Bankruptcy No. 89–652–BKC–3P7. Adv. No. 92–8337.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

June 9, 1993.

William K. Thames, II, Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, FL, for plaintiff.

Hildy S. Stern, U.S. Dept. of Justice, Washington, DC, for defendants.

Charles W. Grant, Jacksonville, FL, defendants, trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

Southeast Bank, N.A. filed a complaint for turnover claiming $15,000.00 being held by the trustee, defendant Charles W. Grant. Defendant Internal Revenue Service claims the funds asserting a right of set-off provided for in § 553 of the Bankruptcy Code. This adversary proceeding is before the Court on plaintiff's motion for summary judgment. The parties have agreed that no genuine issue as to any material fact exists, and the proceeding may be resolved as a matter of law. Accordingly, the Court enters the following findings of fact and conclusions of law:

### Findings of Fact

Apex International Management Services, Inc. filed for relief under chapter 11 of the Bankruptcy Code on March 14, 1989.

On April 11, 1990, the case was converted to chapter 7.

Prior to filing, Apex had a contract with the United States Air Force to perform maintenance at Shaw Air Force Base, South Carolina, (No. F38601–85–D–0016), which expired on September 30, 1988.

After filing, debtor's attorney began investigating claims against the government. The debtor subsequently filed claims in the United States Claims Court in the Armed Services Board of Contract Appeals on contracts for Fort Stewart, Georgia, Naval Air Station Jacksonville, Florida, and Fort Shaw, South Carolina. Debtor's attorney in an affidavit filed with this Court states that this process began in February, 1990.

Debtor and the Air Force entered into a settlement agreement concerning the Fort Shaw, South Carolina, contract on November 15, 1991. The settlement required that the Air Force increase the contract price by $15,000.00 and that the debtor would release all existing and future claims it may have in Contract No. F38601–85–D–0016. In accordance with the terms of the settlement the contract was modified on January 27, 1992.

Plaintiff has an interest in the proceeds from this contract pursuant to a perfected security interest in debtor's receivables. By Order of October 4, 1989, it was awarded adequate protection for this interest. The United States and the Air Force were parties in that proceeding. Debtor has defaulted in the payments required by the adequate protection order.

Defendant, Department of the Treasury, Internal Revenue Service (Service), filed a claim for unpaid pre-petition taxes in debtor's chapter 11 case on June 30, 1989. On May 2, 1991, the Service filed a claim for unpaid post-petition taxes. The June 30, 1989, claim states that the amounts due are not subject to any set-off or counterclaim. The May 2, 1991, claim makes no reference to any right of set-off.

In a letter dated December 10, 1991, from Major Mark W. Golden, the Air Force informed the Service that it anticipated paying the settlement from the Fort Shaw contract to the chapter 7 trustee "within the next two weeks." The Service sent a letter to the trustee, on December 23, 1991, stating that it was entitled to the settlement funds by virtue of a right to set-off. In a subsequent letter from Major Golden to the Service dated February 6, 1992, the Air Force informed the Service that an invoice had been delivered to the Air Force and that it would inform the Service when payment was made.

On January 21, 1992, the Service filed amended claims for pre-petition and post-petition taxes. The amendment to the pre-petition claim added seven cents ·to the total claim while the amendment of the post-petition claim left the amount unchanged. Both amended claims state that the Service has a right of set-off pursuant to § 553 of the Bankruptcy Code.

### Conclusions of Law

Section 553 of the Bankruptcy Code preserves non-bankruptcy set-off rights. Section 553(a) states in pertinent part as follows:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before commencement of the case.

### Mutuality

■ Section 553 does not mandate that the debt and claim be of identical character or that they arise from the same transaction. "The only requirement is that the debt and claim be mutual—that something is owed by both sides." *In re Sound Emporium, Inc.*, 48 B.R. 1, 3 (Bankr.W.D.Tex. 1984). Mutuality requires that "each party must owe a debt each directly to the other." *In Matter of Romano*, 52 B.R. 586 (Bankr.M.D.Fla.1985).

Debtor owes the Service both pre-petition and post-petition taxes. The United States, through its Air Force, owed and has paid the chapter 7 trustee $15,000.00 pursuant

to the settlement between debtor and the Air Force.

█ If the Service is permitted to set-off part of the tax debt it is owed against the settlement obligation of the Air Force, it must stand in the shoes of the Air Force. In *In re Sound Emporium*, 48 B.R. 1 (Bankr.W.D.Tex.1984) the Court addressed the question whether the Service could set-off amounts owed to it against amounts owed to the debtor by the Army. The Court found that the Service and the Army stood in the same shoes and held that the Service could set-off the amount owed under an Army contract against the debtor's tax liability. Similarly, in *In re Defense Services, Inc.*, 104 B.R. 481 (Bankr.S.D.Fla. 1989) the Court held that there was no question that the Service could set-off against amounts owed the debtor under federal food service contracts stating that "since *Gratiot v. United States*, 40 U.S. (15 Pet.) 336, 10 L.Ed. 759 (1841), there has been no question of the right of the government to apply moneys due it to the extinguishment of its obligations on other accounts." *Id.* at 484. Accordingly, the Service may set off debts owed to it against debts owed by another government unit.

█ Mutuality also requires "that the debts must be in the same right and between the same parties standing in the same capacity." *In Matter of Romano*, 52 B.R. 586 (Bankr.M.D.Fla.1985). This means that the identity of the parties determines whether mutuality exists and, in turn, the timing of the obligations determines the identity or capacity of the parties. Because the pre-petition debtor acts in a different capacity than does the post-petition debtor, debts that arose at different times, one pre-petition and one post-petition, lack mutuality and set-off may not be had under § 553. *In re Charter*, 86 B.R. 280 (Bankr.M.D.Fla.1988); *T & B General Contracting*, 12 B.R. 234 (Bankr. M.D.Fla.1981); *In re Mohawk Industries, Inc.*, 82 B.R. 174 (Bankr.D.Mass.1987); 4 Collier on Bankruptcy, ¶ 553.08[1] 553–46 (15th ed.).

█ Thus, in order to determine whether mutuality exits between the obligations of

the debtor and the government this Court must determine when the obligations arose. The Third Circuit held in *Cooper–Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93 (3rd Cir.1984) that the settlement, post-petition, of claims pursuant to a pre-petition contract does not relate back to the contract. In that case, debtor brought a breach of contract action to enforce a contract of sale for common carrier operating rights. Subsequent to filing suit, debtor sought chapter 11 protection, and defendant filed a claim against debtor's estate for unpaid freight charges. The parties settled the suit. In refusing to allow the creditor to set off its settlement obligation against its bankruptcy claim the Court said, "[T]he settlement agreement is itself a contract, separate and independent from the dispute giving rise to the lawsuit which is settled." Thus, there was no mutuality because the debtor's obligation arose pre-petition while the creditor's obligation pursuant to the settlement agreement arose post-petition. *Cooper–Jarrett*, 726 F.2d 93, 96 (3rd Cir.1984).

Here, as in *Cooper–Jarrett*, the settlement agreement is a new post-petition contract between the Air Force and the debtor. The government's payment obligation arose post-petition. Contract No. F38601–85–0016 had expired by its own terms on September 30, 1988. Settlement of the claims arising from this contract occurred on November 15, 1991. The settlement agreement between debtor and the Air Force required that the Air Force pay $15,000.00 and that the debtor release all pending and future claims from the Fort Shaw contract. There is consideration flowing between the parties and a new contract was formed in November, 1991, twenty-five months after debtor filed its petition.

The fact that the payment obligation of the Air Force arose post-petition does not mean that the defendant's claim for set-off necessarily fails. Although § 553(a) does not specifically authorize such arrangements, the Fifth Circuit has allowed the set-off of mutual post-petition debts. *In re Alfar Dairy, Inc.*, 458 F.2d 1258 (5th Cir.),

cert. denied, 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 501 (1972).[1]

Mutuality exists between the post-petition obligations of debtor and the Air Force. Debtor as debtor-in-possession, accrued post-petition tax liability that remains unpaid. The Air Force incurred post-petition liability upon the settlement of debtor's contract claims. Because the debtor owes the Service for unpaid taxes and the Air Force owed debtor pursuant to the settlement agreement and the Service acts in the same capacity as the Air Force, there is mutuality between these obligations. Consequentially, the mutuality requirement of § 553(a) is met.

### Waiver

■ A party may waive its right to set-off by failing to timely assert it. *In re AquaSport*, 115 B.R. 720 (Bankr.S.D.Fla. 1990). Additionally, a creditor may waive its right to set-off if it provides information that its claim is not subject to set-off and the debtor relies to its detriment on that information. *Sound Emporium*, 48 B.R. 1 (Bankr.W.D.Tex.1984); *In re Britton*, 83 B.R. 914 (Bankr.E.D.N.C.1988). The Court *In re Sound Emporium* held that an amendment reflecting a right to set-off would be allowed when the failure to assert the right was the result of a good faith mistake and the claim was promptly amended. However, when another creditor relies to its detriment on the omission, the amendment would not be allowed and the creditor would have waived its right of set-off.

■ Here, the Service initially filed a claim that expressly stated that it was not subject to any set-off. The June 30, 1989, claim stated that it was "not subject to any set-off or counterclaim except" and no exception was provided. Two years later, after plaintiff had reached a settlement with the Air Force, the Service amended its pre-petition claim to assert a right of set-off by including on its proof of claim form "The Service is a secured claimant under section 506(A) of the B/C and is entitled to a right of offset under section 553(A) of the B/C subject to auromatic [sic] stay in the amount of $15,000.00 due from the United States." At the same time defendant filed an amendment to its May 2, 1991, post-petition claim that contained the same language asserting a right to set-off.

The Service was aware of debtor's claims against the government because it knew of this Court's Order granting plaintiff an interest in the proceeds of debtor's government contracts. The government had knowledge of the Order because the United States and the Air Force were defendants in the adversary proceeding that resulted in the adequate protection order. In addition, because the Service stands in the shoes of the Air Force, it is charged with knowledge of plaintiff having filed claims with the United States Court of Claims in the Armed Services Board of Contract Appeals. It would be inconsistent to hold that the Service acts in the same capacity as the Air Force for purposes of allowing it to exercise a right of set-off but acts in a different capacity for purposes of its knowledge of Court orders and proceedings against other governmental agencies. This Court will not approve this inconsistency.

Plaintiff spent two years and substantial funds pursuing debtor's claims against the Air Force while the Service did nothing. It was silent until after plaintiff realized a benefit from its efforts. The Service waited to amend its claims until after the settlement even though it had prior knowledge of debtor's claims. The only action the Service took to protect its interest was the addition of the set-off notation on its claims. Clearly, it allowed plaintiff to rely to its detriment on the information provided in its original proof of claim that no offset existed. The plaintiff detrimentally relied by spending time and money pursuing debtor's claims against the government pursuant to the security interest recognized in the adequate protection order

---

**1.** In *Bonner v. Prichard,* 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

while the Service waited until plaintiff prevailed to assert a right.

The Service argues in its brief that it took no action to protect its right to set-off because its interest is not adverse to that of the Air Force. However, in *In re Wilson*, 49 B.R. 19 (Bankr.N.D.Tex.1985), it was held that the failure to assert an offset right prior to releasing the funds to the trustee resulted in waiver of the Small Business Administration's right to offset a debt owed to it against a tax refund owed to the trustee by the Service. The government should not be treated differently than other creditors. *In re Britton*, 83 B.R. 914 (Bankr.E.D.N.C.1988).

The Service knew of the impending turnover of the settlement funds to the trustee and failed to take any action to prevent it. The December 10, 1991, letter from Major Golden to the Service shows that the Service was aware that the Air Force intended to turn the funds over to the trustee. Although it is true that the Service is barred from taking any steps directly against the funds because of the automatic stay, it had the right to file a motion to lift or modify the stay to permit it to levy against the funds in the hands of another agency. The Service failed to do anything except to add a line to its claim two years after filing it.

### *Equitable Considerations*

 Set-off is a permissive doctrine that is within the equitable power of the court to grant or deny. *In re Charter Co.*, 103 B.R. 302 (D.M.D.Fla.1989), rev'd on other grounds 913 F.2d 1575 (11th Cir. 1990). Set-off is contrary to the Code's basic policy of equal treatment among creditors and as such is strictly construed. *Id.* In addition, the doctrine of set-off is based on fairness. *In re G.S. Omni Corp.*, 835 F.2d 1317 (10th Cir.1987).

It seems unfair to this Court to allow the Service to exercise its right to set-off when it failed to take any action to protect its interest while plaintiff actively pursued its claims against the government. It appears to the Court that the Service's failure to insure its set-off rights should preclude its circumventing the equitable treatment of another creditor who made a major effort to obtain the settlement.

The Service knew of the contract claims and the adequate protection order two years prior to amending its claims. Allowing the government to sit back and bide its time while another creditor is relying on the information contained in the government's proof of claim is contrary to the equitable principles of the Code including the principle of equal treatment for creditors.

### *Conclusion*

The Service waived its right to set-off because of inaction, and it will not be permitted to set-off because it would be inequitable. Although the obligations of the debtor and the Air Force and the Service are mutual, and the Service has a substantive non-bankruptcy right to set-off, this Court will not condone inactivity and failure to provide information to other creditors by rewarding the government $15,000.00 against its tax claims. Accordingly the plaintiff's summary judgment motion is granted. A separate judgment consistent with these findings of fact and conclusions of law will be entered.